# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **DAVID PERKINS,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Case No.: DLB-20-811** |
| **LIEUTENANT WALTER DONOWAY,** *et al.*, | * | |
| | * | |
| **Defendants.** | | |

## MEMORANDUM OPINION

David Perkins, a Maryland state inmate confined to Maryland Correctional Institution –
Hagerstown ("MCI-H"), filed a civil rights complaint pursuant to 42 U.S.C. § 1983 after another
inmate violently assaulted him while he was incarcerated at Eastern Correctional Institution. ECF
1. He claims defendants Lieutenant Walter Donoway, Sergeant Steven Wilson, and Sergeant Luis
Ramos failed to protect him from substantial risk of serious injury by allowing him in the day room
with other inmates when they knew the inmates posed a threat to him. ECF 9 & 13 (am. compl.
& supp.). Defendants filed a motion to dismiss or, in the alternative, motion for summary
judgment. ECF 31. Perkins filed an opposition, a statement of disputed facts, a brief in support
of his opposition, and a declaration, all under oath. ECF 36, 36-1, 36-2, 36-4; *see* ECF 36, at 7
(oath of affirmation). In his opposition, Perkins seeks leave to amend his complaint and asks the
Court to treat his brief as an amended complaint. ECF 36, at 2; ECF 36-2, at 8–9. Defendants
filed a reply in support of summary judgment and in opposition to Perkins' attempt to amend his
pleading. ECF 43. They also filed a motion to exceed the page limit in their reply brief, ECF 42,
which is granted. The parties separately filed several exhibits. ECF 31-4 – 31-9, 36-4, 43-1.

Finally, Perkins filed a motion to extend time to respond to the defendants' reply, ECF 46, which is denied as moot because the Court did not authorize a surreply.  *See* Loc. R. 105.2(a).

A hearing is not necessary.  *See* Loc. R. 105.6.  For the reasons stated below, summary judgment is granted in favor of defendant Ramos and denied as to defendants Donoway and Wilson.  Perkins' request to amend is denied without prejudice.  The Court will appoint counsel for Perkins and give counsel the opportunity to file a motion for leave to amend and a proposed amended complaint.

## I.    Background

On December 8, 2017, Perkins submitted an inmate statement notifying prison officials that he feared other inmates were going to stab him because a correctional officer told the inmates that Perkins gave him "incriminating information about [them]."  ECF 36-2, at 9–10; ECF 36-4, at 3–4.  Soon thereafter, he was transferred to administrative segregation.  ECF 36-2, at 10; ECF 36-4, at 7; ECF 31-6, at 2.  Donoway, Wilson, and Ramos worked on the administrative segregation unit where Perkins was transferred.  ECF 31-6, at 1–2; ECF 31-7, at 1–2; ECF 36-2, at 21.  According to Perkins, within days of arriving in administrative segregation, he told Donoway, with Wilson present, that "he wanted to be separated from inmates" because they may believe he is a "snitch" and "inmates ha[d] been threatening him about being a 'snitch.'"  ECF 36-2, at 10–11, 21–22.  He said that he "was in fear for [his] life, that inmates were yelling and threatening [him], and telling [his] cell-mate that [Perkins] was a 'snitch.'"  ECF 36-4, at 8; *see* ECF 36-2, at 21–22.  Perkins told Donoway and Wilson that "word [that he was a snitch] had already made it to th[e] unit, and [he] needed to either be separated from 'all inmates completely' or transferred to 'Protective Custody.'"  ECF 36-4, at 8.  He also told Donoway and Wilson that he "did not want to go back in the cell with [his] cell-mate."  *Id.*; *see* ECF 36-2, at 21–22.  Perkins

stated that Donoway told him he would "see what [he] can do," but then did not separate him from his cellmate or send him to protective custody.  ECF 36-2, at 11, 22; ECF 36-4, at 8.[1]

A few months later, on March 8, 2018, Perkins was in the day room of the administrative segregation unit when inmate Edward Johnson assaulted him, slicing his face and ear.  ECF 31-4, at 6 (serious incident report); ECF 36-4, at 9.  At the time, Donoway and Wilson both were on the unit, albeit not in the day room.  ECF 36-2, at 17, 25; ECF 31-4, at 39–40; ECF 31-6, 31-7. Donoway was the Housing Unit Lieutenant and Wilson was the "OIC," the officer in charge who "works the 'control bubble' controlling what cell doors are opened and closed, as well as all inmate movements."  ECF 36-2, at 17; ECF 31-4, at 39–40; ECF 31-6, at 1.  Donoway's "responsibilities included daily oversight of Correctional Officers and Sergeants, as well as monitoring inmate movement."  ECF 31-6, at 1.

Correctional Officer David Hearn was on the tier at the time of the assault and saw Johnson running away from Perkins, who was holding the right side of his face, which was bleeding.  ECF 31-4, at 6; ECF 36-2, at 11–12.  Officer Hearn called for assistance, and responding officers took

---

[1] Perkins states that, on or about January 1, 2018, inmate Edward Johnson threw feces and urine at him.  ECF 36-2, at 11; ECF 36-4, at 8.  He claims that Wilson questioned him about what happened and asked whether he "had any trouble" with Johnson.  ECF 36-2, at 11; ECF 36-4, at 8.  Perkins states that he answered that he "shouldn't" have an issue with Johnson, because he feared retribution for saying more.  ECF 36-2, at 11; ECF 36-4, at 8–9.  Donoway states that he was unaware of the alleged January 1 incident with Johnson, that he could find no record of it, and that Perkins never mentioned any concerns about Johnson when he met with Donoway monthly to review his segregation status.  ECF 43-2, at 2.  Additionally, defendants note that Wilson was on leave on January 1, 2018, and that no such incident was reported between December 27, 2017, and January 2, 2018.  ECF 43, at 20–21; *see* ECF 43-1, at 95–98, 101–48).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." *Smith v. Ozmint*, 578 F.3d 246, 254 (4th Cir. 2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).  Because the record blatantly contradicts Perkins' account, the Court does not consider the alleged January 1 incident in ruling on defendants' motion.

Perkins to the medical unit for evaluation, after which he was transported to the emergency room. ECF 31-4, at 6; ECF 36-2, at 12.  Perkins required plastic surgery and stitches because of the assault.  ECF 36-2, at 12; ECF 36-4, at 17.

Perkins states that, a few days later, Donoway questioned him, with Wilson and Ramos present.  ECF 36-2, at 12, 22; ECF 36-4, at 9–10.  Perkins declares that Donoway said that

> he knew that this was going to happen, because he received many letters from inmates telling him that this was going to happen, and he overheard many conversations of inmates yelling out of the cracks of their doors to other inmates when [Donoway] would go back and forth between the rec hall and [Perkins'] cell, but it's not his job to try to protect inmates that chose to snitch on everybody, including his officers.

ECF 36-4, at 10; *see* ECF 36-2, at 12, 22.

Another inmate, Osbaldo L. Berrios, declares that he spoke with Donoway about his concern for his own safety.  ECF 36-4, at 15–16.  Berrios feared that other inmates wanted to hurt him because he had told Donoway incriminating information about them, and Donoway in turn told those inmates what he heard from Berrios.  *Id*.  According to Berrios, during his conversation with Donoway about his concern for his own safety, Donoway stated he "'knew that David Perkins was going to get hurt eventually" because Perkins had "asked for help and to be separated or brought to [protective custody]" and Donoway "was receiving letters from inmates (telling him that [that Perkins would get hurt])."  *Id*. at 16.  Additionally, Donoway told Berrios that he had "heard inmates yelling at David Perkins every time that he went to the rec hall about him being a 'snitch.'"  *Id*.  Donoway then told him that it was "'not his responsibility to protect inmates that snitch on everybody,'" that Perkins had "snitched on his officers too, and that he's not going to make his job harder to help a[n] inmate that snitches on his officers," and that he "hates snitches, and that a snitch is not a real man."  *Id.* at 16–17.  He stated that Donoway said that inmates need to learn "never to get caught snitching on his officers."  *Id.* at 17.

Donoway and Wilson, through declarations, swear that did not know, before the assault, about any issues between Perkins and Johnson or any "particular threat against" Perkins. ECF 31-6, at 2; ECF 31-7, at 2. Donoway acknowledges he met with Berrios, but he declares he did not discuss Perkins with Berrios or make the statements Berrios ascribes to him. ECF 43-2, at 3.

## II.    Motion to Amend

In his opposition to the defendants' motion, Perkins seeks leave to amend his complaint and asks the Court to treat his brief in support of his opposition as an amended complaint. ECF 36, at 2; ECF 36-2, at 8–9. He seeks to augment his factual allegations regarding the March 8 assault and to add a claim for injunctive relief "to enforce DOC to give the Plaintiff a thorough medical check up, at a[n] outside hospital, pay all of the treatment that is warranted, and release the Plaintiff from custody at a[n] earlier date to avoid any further damages to the Plaintiff." ECF 36-2, at 8. In their opposition to plaintiff's request to amend, the defendants argue that the request is procedurally deficient because it appears within an opposition brief and it is futile because the case would not survive summary judgment even with the proposed amendments. ECF 43, at 1–3 & n.1, 7–9. In the interest of justice and because Perkins does not currently have counsel, the Court construes his brief in support of his opposition as an opposition to the motion for summary judgment, a motion for leave to amend, and a proposed amended complaint. See Fed. R. Civ. P. 1.

Pursuant to Rule 15, courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "A motion to amend should only be denied when 'the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" *ACA Fin. Guar. Corp. v. City of Buena Vista, Va.*, 917 F.3d

206, 217–18 (4th Cir. 2019) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).

When Perkins' filing is viewed as an amended complaint alleging a new claim for injunctive relief for medical care and additional facts about the assault, it does not comply with the pleading requirements of Rule 8. A complaint must contain "a short and plain statement of the claim" that shows that the plaintiff "is entitled to relief." Fed. R. Civ. P. 8(a). Under Rule 8(d)(1), each allegation in a complaint should be "simple, concise, and direct." Perkins' proposed amended complaint does not state a claim for injunctive relief for medical care because he has not alleged, as is required to obtain such relief, that any defendant was deliberately indifferent to his medical needs, in violation of his Eighth Amendment rights. *See Estelle v. Gamble*, 429 U.S. 97, 103, 104 (1976). His additional allegations in support of his existing claim for damages are interwoven with his argument in opposition to the motion, rendering it difficult to construe the document as a stand-alone pleading with simple, concise, and direct allegations. Therefore, the motion for leave to amend is denied without prejudice. Because some of Perkins' claims survive the defendants' pre-discovery summary judgment motion, he will be appointed counsel, who may file a motion for leave to amend and a proposed amended complaint.[2]

### III.    Standard of Review

Defendants move to dismiss the complaint for failure to state a claim or, alternatively, for summary judgment. The Court's review of a Rule 12(b)(6) motion typically is limited to the pleadings, documents attached to the complaint, and the parties' briefs. *See* Fed. R. Civ. P. 12(b)(6), 12(d); *see also* Fed. R. Civ. P. 10(c). The Court also may consider documents integral

---

[2] For purposes of the summary judgment motion, the Court may consider as record evidence the filing's new allegations about the assault because the filing is verified. In doing so, the Court does not convert the filing into an amended complaint.

to and explicitly relied on in the complaint when their authenticity is not disputed.  *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015).  When the parties present and the Court considers matters outside the pleadings on a Rule 12(b)(6) motion, the Court must treat the motion as one for summary judgment under Rule 56, and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).

Perkins received sufficient notice that the motion may be treated as a summary judgment motion.  The Court sent notice advising him that the defendants' motion could be construed as one for summary judgment and could result in the entry of judgment against him.   ECF 32. Additionally, the defendants' motion, identifying summary judgment as possible relief, provided sufficient notice for Perkins to have a reasonable opportunity to present relevant evidence in support of his position.  *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998).  Indeed, Perkins presented evidence along with his opposition.  ECF 36-4.  Thus, the Court is satisfied that he has been advised that the defendants' motion could be treated as one for summary judgment and that he has been given a reasonable opportunity to present materials in response to the motion.  The Court will resolve the motion under Rule 56.

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  To meet its burden, the party must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" in support of its position. Fed. R. Civ. P. 56(c)(1)(A).  Then, "[t]o avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial."  *Perkins v. Int'l Paper*

*Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  The opposing party must identify more than a "scintilla of evidence" in support of its position to defeat the motion for summary judgment.  *Id.* at 251.  The Court "should not weigh the evidence."  *Perkins*, 936 F.3d at 205 (quoting *Anderson*, 477 U.S. at 249).  However, if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," then summary judgment is proper.  *Id.* (quoting *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  In ruling on a motion for summary judgment, this Court "view[s] the facts and inferences drawn from the facts in the light most favorable to . . . the nonmoving party."  *Perkins*, 936 F.3d at 205 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996)).

## IV.    Analysis

### A.  Exhaustion of Administrative Remedies

The defendants raise the affirmative defense that Perkins has failed to exhaust his administrative remedies.  The Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003).

Exhaustion under § 1997e(a) is mandatory, and therefore the plaintiff must exhaust his available administrative remedies before this Court will hear his claims.  *See Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016); *Jones v. Bock*, 549 U.S. 199, 215–16 (2007); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F. 2d 674, 682 (4th Cir. 2005).  Consequently, if the undisputed facts show Perkins has not properly presented any of his claims through an available administrative remedy procedure, Court must enter summary judgment in the defendants' favor on that claim pursuant to the PLRA.  *See Ross*, 136 S. Ct. at 1857; *see also Bacon v. Greene*, 319 F. App'x 256, 257–58 (4th Cir. 2009).

To exhaust his administrative remedies, an inmate must complete "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).  This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford*, 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original).  The Court will not dismiss a claim as unexhausted "if a prisoner, through no fault of his own, was prevented from availing himself of [an administrative remedy]." *Moore*, 517 F.3d at 725.  "The Supreme Court has identified certain circumstances in which an official grievance policy is not 'capable of use' in this sense," including "situations in which officials 'thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Moss v. Harwood*, 19 F.4th 614, 621 (4th Cir. 2021) (quoting *Ross*, 136 S. Ct. at 1859–60).

An administrative remedy procedure process applies to all Maryland prisons.  Md. Code Regs. ("COMAR") 12.02.28.01 *et seq.*  A prisoner seeking redress for a rights violation must follow that process, beginning with filing an ARP request with the prison's managing official.  Md.

Code Ann., Corr. Servs. § 10-206(b); COMAR 12.07.01.04; *see Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006) (to exhaust administrative remedies, a prisoner must complete "the administrative review process in accordance with the applicable procedural rules").  If his ARP request is dismissed, he can challenge the decision by filing an appeal with the Commissioner of Corrections. COMAR 12.07.01.05C.  If he is dissatisfied with the result when he completes that procedure, he may file a grievance with the Inmate Grievance Office ("IGO").  Corr. Servs. §§ 10-206(a), 10-210; COMAR 12.07.01.03, 05B.  The IGO may refer the complaint to an administrative law judge ("ALJ") for a hearing or dismiss it without a hearing if it is "wholly lacking in merit on its face." Corr. Servs. §§ 10-207, 10-208; Cts. & Jud. Proc. § 10-208(c); COMAR 12.07.01.06A, .07, .07B, .08.  If the IGO dismisses the complaint, its dismissal serves as a final agency determination.  Corr. Servs. §§ 10-207(b)(1).  If the complaint is referred to an ALJ, the ALJ provides a proposed decision to the Secretary of Department of Public Safety and Correctional Services.  *See* Corr. Servs. § 10-209(b)–(c).  The Secretary, in turn, makes a final agency determination.  *See id.*

Perkins admits that he did not complete the administrative remedies process but insists that he was unable to file a timely ARP about the incident because a correctional officer misinformed him that he first had to obtain the related incident report and medical records and attach them to the ARP.  ECF 36-4, at 12.  He states that he attempted to get the documents, and when he could not, the same officer told him to file ARPs to obtain the documents and that he would be given time to file the ARP on the assault once he had the necessary documents.  *Id*.

The defendants argue that Perkins' reasons for not exhausting administrative remedies are not credible because Perkins does not name the officer or provide the dates he spoke with the officer.  ECF 43, at 13.  However, Perkins' verified statements are corroborated by the ARPs that he did file.  ECF 31-4, at 46–47.  On April 16, 2018, Perkins filed his first post-assault ARP, asking

why he had not received any information about the March 8 incident. *Id*. at 46. In it, Perkins stated he had sent a written request to "medical records" for the records associated with the incident and, in response, he received paperwork to complete and a "money voucher." *Id.* He completed the paperwork and returned it with the money voucher. *Id.* He stated that he wanted both the March 8 incident report and the related medical records. *Id.* The ARP was dismissed for procedural reasons because "additional information [was] needed to investigate [his] request." *Id.* In an April 20, 2018 ARP, Perkins responded to the dismissal by describing the incident in further detail and stating that the money for the documents had been taken from his account. ECF 31-4, at 47. The second ARP also was dismissed for procedural reasons because Perkins raised both medical and custody issues in the same ARP and needed to file a separate ARP for each issue. *Id*. Both ARPs are consistent with Perkins' statement that he believed he needed to obtain documents to include with an ARP about the assault and that he tried to obtain them. The defendants argue that Perkins cannot be believed because he has prior experience with the ARP process and access to ARP filing instructions.[3] Even assuming those facts are true, they do not necessarily negate his statement that an officer told him that an ARP regarding the March 8 assault would be denied automatically if he did not file it with proper documentation. When Perkins eventually learned that he could file the ARP without the documents and that his ARP requests for the documents did not extend his filing deadline, the filing deadline had passed. Therefore, he did not file an ARP regarding the assault. When the facts are viewed in the light most favorable to Perkins, there is a genuine dispute about whether the ARP process was made unavailable to him by a correctional

---

[3] On December 18, 2017 plaintiff filed an ARP complaining that his property had been mishandled. ECF 43-1, at 18.

officer who misrepresented the procedural requirements.[4]  *See Toomer v. BCDC*, 537 F. App'x 204, 206–07 (4th Cir. 2013) (concluding that, insofar as a "Step III grievance" was required to exhaust administrative remedies, the defendants were "estopped from arguing . . . fail[ure[ to exhaust" because "the instructions [the plaintiff received] essentially diverted [him] from filing a Step III grievance"); *Brown v. Croak*, 312 F.3d 109, 112–13 (3d Cir. 2002) (holding that administrative remedy was unavailable to prisoner when prison officials told him to wait until informal investigation concluded before filing a formal grievance); *see also Bacon*, 319 F. App'x at 258 (finding a genuine dispute of material fact regarding availability of administrative remedies where the plaintiff asserted that the defendant refused to disclose information about the officers on duty when the plaintiff was assaulted and that "this lack of information rendered him incapable of filing a request for administrative remedy that would comply with institution procedure"). Accordingly, the Court denies summary judgment on the failure to exhaust defense because, on the current record, a reasonable jury could find that Perkins, "through no fault of his own, was prevented from availing himself of [the administrative process]." *See Moore*, 517 F.3d at 725.

### B.  Eleventh Amendment Immunity

The defendants argue that, under the Eleventh Amendment, they are immune from suits seeking money damages from them in their official capacities.  Perkins does not contest the well-established law that officials sued in their official capacities are not "persons" under § 1983 who may be liable for monetary damages.  *See Fauconier v. Clarke*, 966 F.3d 265, 279–80 (4th Cir. 2020) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).  Rather, Perkins asserts

---

[4] The Court need not address Perkins' assertion that he did not pursue the ARP process due to intimidation by other inmates and correctional officers. ECF 36-2, at 17; ECF 36-4, at 12. Perkins' allegations of intimidation are non-specific.  Nevertheless, it is not necessary to address this issue as the Court finds a genuine dispute as to whether the ARP process was unavailable to Perkins for other reasons.

that he seeks damages against the defendants in their individual capacities only.  ECF 36, at 4;
ECF 36-2, at 8.  This, of course, is permissible.  *See Fauconier*, 966 F.3d at 279–80.

Perkins counters that Eleventh Amendment immunity does not bar his claims for injunctive
relief against state officials in their official capacities.  This, too, is true.  *Tankersley v. Almand*,
837 F.3d 390, 406 n.6 (4th Cir. 2016) (Davis, Sr. C.J., concurring in part); *see Will*, 491 U.S. at 71
n.10.  But Perkins did not assert claims for injunctive relief in his complaint.  The first mention of
injunctive relief is in Perkins' opposition brief, which doubles as a proposed amended complaint
that the Court denied leave to file at this time.  Therefore, the Court need not address now the
defendants' argument that they are immune from a claim for injunctive relief.

### C.  Failure to Protect

Perkins claims the defendants violated his constitutional rights when they failed to protect
him from an excessive risk of serious injury.  "The Eighth Amendment protects prisoners from
'unnecessary and wanton infliction of pain.'"  *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir.
2017) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)).  Under the Eighth Amendment, prison
officials must "take reasonable measures to guarantee the safety of . . . inmates."  *Id.* (quoting
*Whitley v. Albers*, 475 U.S. 312, 319–20 (1986)).  "Being violently assaulted in prison is simply
not part of the penalty that criminal offenders pay for their offenses against society."  *Farmer v.
Brennan*, 511 U.S. 825, 834 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

To prevail on a claim for failure to protect from attack by another inmate, the plaintiff must
show that he suffered an objectively serious injury and that the defendants knew of and disregarded
an excessive risk that such an injury would occur.  *Danser v. Stansberry*, 772 F.3d 340, 346–47
(4th Cir. 2014); *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008).  The objective inquiry requires
this Court to "assess whether society considers the risk that the prisoner complains of to be so

grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). "[N]ot every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015).

Then, in a subjective inquiry, the Court determines whether the defendant "is aware of the existence of a general risk" and also knows that his "conduct is inappropriate in light of that risk.'" *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997); *see Farmer*, 511 U.S. at 834, 837. "[C]onduct that amounts to 'deliberate indifference' . . . is viewed as sufficiently shocking to the conscience that it can support [an Eighth or] Fourteenth Amendment claim." *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302 & n.11 (4th Cir. 2004) (quoting *Young v. City of Mount Ranier*, 238 F.3d 567, 575 (4th Cir. 2001)). This is "a very high standard" that requires more than "a showing of mere negligence." *Id.* at 302 (quoting *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999)). Thus, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. The Supreme Court delineated the difference between tort liability and liability for a constitutional violation:

> The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. *See Prosser and Keeton* §§ 2, 34, pp. 6, 213–214; *see also* Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680; *United States v. Muniz,* 374 U.S. 150, 83 S.Ct. 1850 (1963). But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id.* at 837–38.

The defendant's own action—or failure to act—is required for liability under § 1983.  *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977).  There is no *respondeat superior* liability under § 1983.  *Love-Lane*, 355 F.3d at 782.  Officials like Ramos, Wilson, and Donoway may be found liable only if the plaintiff shows the official "acted personally in the deprivation of the plaintiff['s] rights."  *Vinnedge*, 550 F.2d at 928 (quoting *Bennett v. Gravelle*, 323 F. Supp. 203, 214 (D. Md.), *aff'd*, 451 F.2d 1011 (4th Cir. 1971)).[5]

Here, there is no dispute that Perkins suffered an objectively serious injury at the hands of another inmate.  The contested issue is whether the defendants knew of and disregarded an excessive risk that such an injury would come to pass.  *See id.* at 837.

### 1.  Ramos

Perkins cannot prevail on his claim against Ramos because he has not identified any evidence that Ramos knew, before the assault, that inmates had threatened to assault him and that Ramos failed to protect him.  He states Ramos was present when he was interviewed after Johnson assaulted him, but he does not offer any evidence that Ramos knew Perkins was in danger before the assault.  Without any evidence to support his allegation that Ramos was deliberately indifferent to an excessive risk of harm, the Court grants summary judgment in favor of Ramos.

---

[5] A plaintiff may establish a supervisor's liability under § 1983 based on a subordinate's conduct if the plaintiff establishes that (1) the supervisor had actual or constructive knowledge that subordinate's conduct "posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff" (2) the supervisor responded in a manner that was so inadequate that it showed "deliberate indifference to or tacit authorization" of the subordinate's conduct; and (3) there was "an affirmative causal link between the supervisor's inaction" and the plaintiff's constitutional injury.  *Timpson by & through Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).  Perkins does not argue that any of the defendants should be liable as a supervisor for a subordinate's conduct.  Moreover, Perkins has not alleged or offered evidence that any defendant knew that his subordinate's conduct posed an unreasonable risk of injury to him.

###### 2. **Wilson and Donoway**

The deliberate indifference claims against Wilson and Donoway survive summary judgment.  Perkins has submitted evidence that Wilson and Donoway knew that he had been threatened and feared attack by inmates who believed he was a snitch and the officers failed to protect him.  Perkins told them as much within a few days of his transfer to the administrative segregation unit, which was prompted by a December 2017 inmate statement to prison officials in which he expressed his fear of an attack by inmates who believed he was a snitch.  Although there is no evidence that Donoway or Wilson, supervisors on the administrative segregation unit, read the statement, Perkins told Donoway, shortly after his transfer and in the presence of Wilson, that he was afraid to be around any other inmates because they believed he was a snitch and had threatened him on that basis, and that he did not want a cellmate.  And, he told both defendants that, because other inmates believed he was a snitch, he "needed to either be separated from 'all inmates completely' or transferred to 'Protective Custody.'"  And, Perkins declares that, a few days after Johnson assaulted him, Donoway told him that "he knew this was going to happen" and that "it's not his job to try to protect inmates that chose to snitch on everybody, including his officers."  ECF 36-4, at 10.  According to the declaration of Berrios, another inmate on the same unit, Donoway told Berrios that "Perkins[] asked for help and to be separated or brought to [protective custody]" and that "[Donoway] knew that David Perkins was going to get hurt eventually," but it was "not his responsibility to protect inmates that snitch on everybody."  ECF 36-4, at 16–17.

Wilson and Donoway respond that they were not made aware of any "particular threat" against Perkins before the assault.  ECF 31-6, 31-7.  Both declared that, "[p]rior to March 8, 2018, [they] had no knowledge of any hostility or threat between Inmates Perkins and Johnson, nor of

any particular threat against Inmate Perkins" and that "Inmate Perkins never reported to [them] that Inmate Johnson was a threat to him prior to the March 8, 2018, incident." ECF 31-6, at 2; ECF 31-7, at 2. Donoway also declared that he "did not discuss anything about Plaintiff with inmate Berrios, nor did [he] make the statements [Berrios] alleges." ECF 43-2, at 3. Yet neither denies that Perkins communicated to them that inmates had deemed him a snitch and threatened him, that he was scared they would hurt him because they believed he was a snitch, and that he told them he wanted to be moved to protective custody. ECF 31-6, 31-7. Moreover, as for Donoway, there is evidence—albeit disputed—that he said he expected other inmates would injure Perkins because he was considered a snitch. ECF 36-4, at 10, 16–17. Although there is no evidence at this point that Donoway or Wilson knew that Johnson in particular posed a threat to Perkins, they may not escape liability for deliberate indifference by claiming they did not know that Perkins was likely to be assaulted by Johnson. *See Farmer*, 511 U.S. at 843 ("Nor may a prison official escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault.").

When the evidence is viewed in the light most favorable to Perkins, the Court finds there are genuine disputes of material fact precluding summary judgment on the deliberate indifference claim against Donoway and Wilson. They include: whether Wilson and Donoway knew that inmates had threatened to harm Perkins because they deemed him a snitch and whether Perkins asked them to move him to protective custody because of the threats; what action, if any, Wilson and Donoway took in response to the threats; whether allowing other inmates into the day room when Perkins was there posed an excessive risk of harm to him; and whether Wilson and Donoway knew their action or inaction was inappropriate under the circumstances. Resolution of these

material factual disputes require credibility determinations that cannot be made on summary judgment. *See Roberts v. Gestamp W. Va., LLC*, 45 F.4th 726, 732 (4th Cir. 2022).

### D. Qualified Immunity

The defendants assert they are qualifiedly immune from the § 1983 claim. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally . . . are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Proof that the official acted in objectively reasonable reliance on existing law . . . would exempt an official from liability under § 1983 . . . ." *Melgar ex rel. Melgar v. Greene*, 593 F.3d 348, 360 (4th Cir. 2010) (citation omitted).

When deciding whether the doctrine of qualified immunity applies, the Court considers (1) "'whether the facts that a plaintiff has . . . shown . . . make out a violation of a constitutional right'" and (2) "whether the right at issue was 'clearly established' at the time of [the] alleged misconduct." *Pearson v. Callahan,* 555 U.S. 223, 232 (2009) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds as stated in Pearson*); *Hicks v. Ferreyra*, 965 F.3d 302, 307 (4th Cir. 2020). The plaintiff bears the burden of proving that a constitutional violation occurred, and the defendant bears the burden of proving that the constitutional right allegedly violated was not clearly established. *See Meyers v. Baltimore Cnty., Md.*, 713 F.3d 723, 731 (4th Cir. 2013); *Henry v. Purnell*, 501 F.3d 374, 377–78 (4th Cir. 2007). Courts have "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in [a] particular case . . . ." *Pearson*, 555 U.S. at 236. In an exercise of

this discretion, the Court considers only the second prong of the qualified immunity analysis: whether the constitutional right was clearly established at the time of the alleged misconduct.

A right is "clearly established" if "it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted." *Raub v. Campbell*, 785 F.3d 876, 882 (4th Cir. 2015). The Court must "consider whether a right is clearly established 'in light of the specific context of the case, not as a broad general proposition.'" *Adams v. Ferguson*, 884 F.3d 219, 227 (4th Cir. 2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam)).  To determine whether a right was clearly established, the Court considers whether "existing precedent . . . placed the statutory or constitutional question beyond debate," making it "sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quoting *al-Kidd*, 563 U.S. at 741).

On the current record, the Court cannot conclude as a matter of law that Donoway and Wilson did not violate Perkins' clearly established Eighth Amendment right to protection from violent assault by other inmates.  As discussed above, Perkins has submitted evidence that Donoway and Wilson knew that he faced an excessive risk of harm because inmates believed he was a snitch and wanted to hurt him, yet Donoway and Wilson did not take action to protect him. There is evidence that they were supervisors on the administrative segregation unit when Johnson, the assailant, was allowed in the unit's day room at the same time as Perkins and lacerated Perkins' face and ear.  When the record evidence is construed in the light most favorable to Perkins, a reasonable jury could find that Donoway and Wilson were deliberately indifferent to an excessive risk of harm to him.  Therefore, the Court concludes that, on the record before it, Donoway and Wilson are not entitled to qualified immunity as a matter of law.

### E.  Conclusion

The defendants' motion to dismiss or, in the alternative, for summary judgment, ECF 31, is treated as a motion for summary judgment.  The motion is denied as moot with respect to their Eleventh Amendment immunity argument, granted as to Ramos, and denied as to Wilson and Donoway.  Perkins' request for leave to amend his complaint, ECF 36, is denied without prejudice. The Court will appoint counsel for Perkins and give counsel an opportunity to file a motion for leave to amend and a proposed amended complaint, if counsel has a good faith basis for doing so. A separate order follows.


September 29, 2022
Date

Deborah L. Boardman
United States District Judge